UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
*Alexandria Division*

PATRICIA BURKE,

    *Plaintiff,*

    v.

JAMES MATTIS, THE SECRETARY OF DEFENSE

    *Defendant.*

1:16-cv-1256 LO/JFA

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HER MOTION FOR INJUNCTIVE RELIEF**

    The jury found that Plaintiff Patricia Burke was subjected to a hostile work environment in retaliation for making protected EEO complaints. (Dkt. No. 111). As a result, the Court is empowered to enjoin the offending conduct, to order affirmative, situationally-appropriate steps to be taken, and to order any other equitable relief that the court deems proper. 42 U.S.C. § 2000e-5(g).

**ARGUMENT**

    When a jury has found a violation of Title VII, it is the duty of the district court to "render a decree which will so far as possible eliminate the discriminatory effects of the past as well as bar like discrimination in the future." *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418 (1975) (internal citations omitted). This places requests for injunctions for Title VII violations in a unique position. Generally, the decision to grant an injunction is a discretionary act. *E.E.O.C. v. KarenKim*, 698 F.3d 92, 100 (2d Cir.2012). But "when a plaintiff has prevailed and established the defendant's liability under Title VII, there is no discretion to deny injunctive relief completely." *United States v. Gregory*, 871 F.2d 1239, 1246 (4th Cir. 1989) (citing *Albemarle* at 418); *United States v. County of Fairfax, VA*, 629 F. 2d 932, 941-42 (4th Cir.

1980), *cert. denied*, 449 U.S. 1078 (1981); *see also King v. McMillan*, 594 F.3d 301, 310 (4th Cir. 2010) ("Title VII remedies have not been limited to correcting only ongoing discriminatory policies. District courts clearly have the authority and should exercise the power to grant injunctive relief even after apparent discontinuance of unlawful practices.") (citing *Gregory*, 871 F.2d at 1246).

Further, district courts have the power to grant injunctive relief even when there is an apparent discontinuance of the unlawful activity. And, according to the Fourth Circuit, this is a duty and power the Court "should exercise." *Gregory*, 871 F.2d. at 1246. This is especially true when the evidence does not prove a total abandonment of the illegal conduct. *Id*. (citing *United States v. Virginia*, 22 Fair Empl. Prac. Cas. (BNA) 936, 937 (E.D. Va. 1978), *remanded on other grounds*, 620 F.2d 1018 (4th Cir.), *cert. denied*, 449 U.S. 1021 (1980). A court has broad power that is bounded by the purposes of Title VII to fashion the relief it believes appropriate to prevent the unlawful conduct from continuing or being repeated in the future. *E.E.O.C. v. KarenKim*, 698 F.3d at 100 (citing *Bridgeport Guardians, Inc. v. City of Bridgeport*, 933 F.2d 1140, 1149 (2d Cir. 1991); *Berkman v. City of New York*, 705 F. 2d 584, 594 (2d Cir. 1983)).

In this case, both the evidence adduced at trial and subsequent events show the need for a decree that will finally end the retaliatory conduct at DSS.

### I. The Court Should Order DSS to Ensure that the Director of DSS's EEO Office Reports Directly to the Director of DSS.

According to Equal Employment Opportunity Commission (EEOC) Management Directive 110 (MD 110) and 29 C.F.R. § 1614.102(b)(4), the "EEO Director shall be under the immediate supervision of the agency head." 29 C.F.R. § 1614.102(b)(4). "The purpose of this requirement is to ensure that the agency truly considers the elimination of workplace discrimination to be a fundamental aspect of the agency's mission." MD 110, p. 1-4. And in

"order to maintain and exercise the independent authority required of the position, the EEO Director cannot be placed under the supervision of the agency's Chief Human Capital Officer or other officials responsible for executing and advising on personnel actions or providing the agency with a legal defense to claims of discrimination, such as the Office of General Counsel." *Id*.

The evidence in this case showed that the Defense Security Service ("DSS") EEO Director once reported straight to the Director of DSS. The EEO Director was then made to report to the DSS Chief of Staff. The Chief of Staff also oversees the Human Capital Management Office.

This played a role in the creation of the retaliatory hostile work environment that the jury found Ms. Burke was subjected to. As Ms. Burke testified in her rebuttal testimony, EEO Director Carolyn Lyle did not believe that her office had the independence to conduct its business without interference by CounterIntelligence Directorate ("CI") Director William Stephens. It was for this reason that Ms. Lyle recommended that an outside entity draft the Final Agency Decision.

Ordering DSS to comply with the Code of Federal Regulations will impose no prejudice on DSS. It will also remedy a lawless election by DSS to de-prioritize the elimination of workplace discrimination, thereby instilling in Ms. Burke and other DSS employees confidence that future complaints will be handled in the manner provided by law. The Court should accordingly order DSS to comply with MD 110 and 29 C.F.R. § 1614.102(b)(4) by directing its EEO Director to report directly to the agency head and not any other person, to include its chief of staff.

### II. The Court Should Prohibit DSS from Interfering With EEO Office Staff as a Means of Retaliating Against Complainants Like Ms. Burke.

The testimony of Michelle Labov and Carolyn Lyle demonstrated that DSS managers, particularly within CI, attempted to influence the EEO process through illegitimate means. Thus, Michelle Labov testified that her employment was threatened as a result of her involvement in the Burke case. Carolyn Lyle--the DSS EEO Director-- testified that her performance evaluation was lowered because of her involvement in Ms. Burke's case.

Title VII's anti-retaliation provision seeks to prevent an employer from interfering with the statute's enforcement. *Burlington Northern and Santa Fe Ry. Co.*, 548 U.S. 53, 57 (2006). It prohibits any act that "would have been materially adverse to a reasonable employee." *Id*. And those acts are materially adverse if they "could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Id*.

It is patently obvious that other DSS employees situated similarly to Ms. Burke might well be dissuaded from bringing their discrimination and/or retaliation complaints if they were to know that EEO Office professionals could have their appraisals downgraded and even be threatened with firing, just for performing their routine duty of counseling complainants and accused managers.  In fact, it is likely that *any and every* reasonable worker could be so dissuaded. Critically, Ms. Burke herself testified that, had she known about the interference with the EEO Office, she would never have filed a complaint.

DSS's practice of interfering with EEO staff chills employees' willingness to engage in the EEO process, thereby frustrating Title VII's purpose. This Court should therefore take this opportunity to order DSS to correct a practice that appears designed to interfere with the sound

administration of Title VII and the attainment of its policy goals. The Court should forbid DSS from retaliating against EEO Office professionals for performing their statutorily-mandated duty.

### III. The Court Should Order DSS to Provide Additional and Mandatory EEO Training to the Managers Within CI.

Multiple members of CI's management were implicated in the retaliatory harassment inflicted against Ms. Burke, to include William Stephens, Franklin Malafarina, Carl Taylor, and Michael Buckley. These were members of management at varying levels, from the Director of CI down to Ms. Burke's direct supervisor. That broad involvement in the harassment demonstrates that CI's management has not received sufficient, *effective*, training. Therefore, DSS should be required to direct CI's managers each to attend 40 hours of live, in-person EEO training to ensure that they properly understand how to comply with the law. The Court should order DSS to provide this training, and to ensure a focuses on precluding retaliation against complainants and the EEO Office.

### IV. The Court Should Order DSS to Create a Plan to Prevent Future Retaliation

The evidence in this case shows that CI's management engaged in retaliation related to at least three different complaints and against the staff of the EEO office. While the court only permitted the jury to hear evidence of two occasions, when deciding on an appropriate remedy to prevent the recurrence of retaliation, the Court should still consider the proffered evidence that Connie Vitiello also faced retaliation for making an EEO complaint. There is a history of retaliation at DSS which lead to the evidence presented and, ultimately, the jury's verdict in this case.

DSS must do more to prevent retaliation from recurring in the future. It should thus develop a plan that (1) acknowledges the problems of the past, (2) identifies organizational

weaknesses that permitted those problems, (3) identifies resources it has at its disposal to prevent future retaliation, (4) identifies resources it does not have but needs to prevent retaliation, (5) provides for concrete steps that will adequately prevent retaliation from occurring in the future, and (6) provides for accountability when staff are found to have engaged in retaliation. DSS's own EEO, HCMO, and management staff are in the best position to develop that plan and submit it to the Court for approval. The Court should thus order DSS to develop a plan to prevent retaliation in the future and submit it to the Court for approval.

### V. The Court Should Order DSS to Make Personnel Realignments that Separate Ms. Burke from Harassers William Stephens, Michael Buckley, and Franklin Malafarina, and to Maintain that Separation Indefinitely.

The evidence showed that Ms. Burke's superiors were the agents of her retaliation and that they were led in that endeavor by William Stephens. And the years-long nature of the harassment shows that these individuals cannot be trusted to refrain from continuing to retaliate against Ms. Burke, regardless of whether they receive future training. Today, Ms. Burke still works under Mr. Stephens.

In fact, the day Ms. Burke returned to DSS following the trial, she was singled out and directed by her manager to start signing-in and -out again. PEX 1. And there are reasons to believe that Ms. Burke's harassers continued their retaliatory campaign after the jury's verdict. In public posts in the Washington Post's comments section in the article addressing the jury's verdict, individuals posting under the pseudonyms "fraudsucks," "casual_observer78," and "advocate for the truth" posted comments that demonstrate they have inside knowledge of Ms. Burke's case. PEX 2 pp. 5-11. These posters attacked Ms. Burke in public, going so far as continuing to (baselessly) suggest that she engaged in fraud and suggesting that readers initiate investigations of her by complaining to the Inspector General. There are no persons known to

Plaintiff with both the knowledge of this case demonstrated by these posters and the incentive to make these defamatory public comments. The Court should infer that these posts were made by one or more of the managers whom the jury found harassed Ms. Burke. Their behavior underlines the necessity of protecting Ms. Burke from her harassers by ensuring that she no longer has to answer to them.

The Court should order DSS to cause this realignment, but it should carefully craft the injunction so as to protect Ms. Burke's career. Obviously, her grade and pay rate should stay the same, and the Court should help ensure that she is not banished, into a position where she will have no meaningful work to do, as the evidence showed has already occurred once before. To do this, the Court should require DSS to propose a realignment within thirty days and submit it to the Court for approval.

It might be possible for DSS to comply with the requested injunction by (1) dismissing the harassing employees, (2) moving the harassing employees' positions outside of CI, or (3) moving Ms. Burke's position outside of CI. Plaintiff takes no position on which of these actions will allow DSS to advance the purposes of Title VII while continuing to meet its mission. The Court should thus order that DSS propose to the Court a realignment that will protect Ms. Burke from William Stephens, Michael Buckley and Franklin Malafarina, and to propose that realignment to the Court within thirty days for approval.

**VI.     The Court Should Prohibit DSS From Retaliating Against Ms. Burke for Making and Prosecuting her Discrimination and Retaliation Complaints**

Ms. Burke is entitled to assurances that DSS will forever stop retaliating against her for her Title VII-protected activities. And even though broad prohibitions are generally disfavored in

equity, the need for this relief is shown by the diversity of means that DSS employed against Ms. Burke and the continuing and lengthy nature of that conduct.

The jury was presented with a constellation of conduct that made up the retaliatory harassment in this case. The breadth of that conduct makes it difficult to predict the shape and nature of retaliation that DSS managers may impose in the future. Therefore, the only way to sufficiently effectuate the purposes of Title VII here is to prohibit further acts of retaliatory harassment.

Importantly, this requested injunction will allow Ms. Burke the opportunity to appeal *straight to this Court* for a contempt citation if future retaliation occurs. The evidence at trial showed that DSS was emboldened in its retaliation due to the *remoteness* of any relief available to Ms. Burke. The granting of this injunction would provide two important assurances against future retaliation. First, Ms. Burke would not be forced to go through a lengthy agency EEO process and/or new litigation before being able to vindicate her rights. And second, the individual harassers could be held responsible for their conduct under the Court's contempt power.

## CONCLUSION

For the reasons stated above, Ms. Burke requests that the Court issue a decree containing the following relief:

1. An order that the DSS EEO Director report directly to the DSS's agency head;

2. An order prohibiting DSS and any and all agents of DSS from interfering with EEO Staff related to EEO complaints;

3. An order that William Stephens, Franklin Malafarina, Michael Buckley and all other managers within CI be required to take additional EEO training;

4. An order directing DSS to formulate a Retaliation Prevention Plan to prevent retaliation against any DSS employees that make or maintain EEO complaints and to submit that plan to the Court for approval;

5. An order directing DSS to submit to the Court proposed personnel realignments that permanently separate Ms. Burke from harassers William Stephens, Franklin Malafarina, and Michael Buckley while preserving Ms. Burke's pay grade and rate and ensuring that she has work commensurate with her skills and pay grade;

6. An order prohibiting DSS or any and all agents of DSS from retaliating against Ms. Burke for making and prosecuting her EEO complaints; and

7. Such other relief as may be just and proper.

Respectfully submitted,

/s/
Benjamin R. Inman
(VSB # 84006)
Attorney for Patricia Burke
J. Madison PLC
1750 Tysons Blvd.
Suite 1500
McLean, Virginia 22102
P (703) 910-5062
F (703) 910-5107
binman@jmadisonplc.com

## CERTIFICATE OF SERVICE

I hereby certify that on November 30, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically send notification of such filing to the following attorneys of record:

Andrew S. Han
Kimere J. Kimball
Lauren A. Wetzler
The United States Attorney's Office
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Avenue
Alexandria, Virginia 22314
(703) 299-3970
andrew.han@usdoj.gov
kimere.kimball@usdoj.gov
lauren.wetzler@usdoj.gov
*Counsel for the Secretary of Defense*

/s/
Benjamin R. Inman
(VSB # 84006)
Attorney for Patricia Burke
J. Madison PLC
1750 Tysons Blvd.
Suite 1500
McLean, Virginia 22102
P (703) 910-5062
F (703) 910-5107
binman@jmadisonplc.com