UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
*Alexandria Division*

PATRICIA BURKE,

    *Plaintiff,*

    v.

JAMES MATTIS, SECRETARY OF DEFENSE

    *Defendant.*

1:16-cv-1256 LO/JFA

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION FOR INJUNCTIVE RELIEF**

JACOB M. SMALL
jmsmall@jmadisonplc.com
BENJAMIN R. INMAN
binman@jmadisonplc.com
J. Madison PLC
1750 Tysons Blvd.
Suite 1500
McLean, Virginia 22102
P (703) 910-5062
F (703) 910-5107

LEIZER Z. GOLDSMITH, *pro hac vice*
lgoldsmith@goldsmithfirm.com
The Goldsmith Law Firm, LLC
5335 Wisconsin Ave., NW
Suite 440
Washington, D.C. 20015
P (202)-895-1506

## INTRODUCTION

The law of the case is that the Defendant subjected Ms. Burke to a hostile work environment because she objected to its discrimination and retaliation, *and* that harassment was so severe or pervasive that it altered Ms. Burke's employment terms and conditions. While this Court still retains jurisdiction, Plaintiff seeks an injunction consistent with her pleaded request, sufficient to permanently end the hostile environment, including the post-trial described below, and prevent its recurrence. Such injunction—including reassignment of Ms. Burke away from supervision by harasser Stephens, or at least an order precluding Defendant from denying her access to its usual policies and opportunities pertaining to reassignment—would fulfill Title VII's promise of equal employment opportunities for Ms. Burke.

Defendant opposes *any* injunction, arguing that Ms. Burke cannot show a cognizable danger of recurrent violation. Having freshly been found liable by the jury, and even while acknowledging its burden to demonstrate that harassment will not recur, Defendant nonetheless points to *no remedial steps* it has taken or plans, to prevent future harassment against Ms. Burke. Defendant seeks permission to continue its insufficient approach to preventing and remedying harassment. It further requests preservation of the status quo, wherein Ms. Burke reports— through intermediaries—to harasser Stephens. In the meantime, Burke has been informed that she is forbidden from obtaining a reassignment for so long as the case proceeds, and has been downgraded on her appraisal requiring her to file an administrative appeal. Stephens and other harassers, however, will apparently receive no discipline, be subject to no risk of termination or even be required to take additional training as a result of the jury's finding.

Defendant would have this Court reduce the jury's verdict to an empty gesture. Yes, the jury found that Defendant's leadership retaliated against Ms. Burke after she engaged in protected activity, but no, Defendant declares, nothing should change. The Court should reject the Defendant's position as contrary to controlling case law and the central purpose of Title VII. The Court should issue an injunction, and, regardless of the specific formulation, that injunction should permanently end the harassment that Ms. Burke has and continues to endure.

## REPLY ARGUMENT

When a Plaintiff has proven Title VII liability and the evidence at trial showed more than a single, 'bad apple' harasser, the Court has discretion to *fashion* the appropriate injunction, but not to *decline* to issue one altogether. The somewhat confusing standard and Fourth Circuit jurisprudence on Title VII injunctions is addressed in Part I, below, where Plaintiff demonstrates why the evidence—both that presented during trial and that which emerged thereafter—demonstrates a persistent, longstanding problem of harassment directed at Ms. Burke with significant risk of recurrence.

Second, reassignment or even removal of the harassing individual—generally not the victim—is a traditional remedy following a hostile environment finding, whether internal to the employer or via verdict and judgment. It is neither overbroad nor a violation of separation of powers to order an offending employer, even a federal agency, to separate a harasser and victim, especially when that order permits the employer to fashion the specifics of the change. Plaintiff's requested personnel realignment is discussed in Part II, where Plaintiff demonstrates that the requested injunctive relief will accomplish Title VII's goal of preventing harassment, with the lightest possible touch and deference to Defendant's legitimate concerns regarding meeting its

mission and protecting the American public. In this regard, the Court should note Ms. Burke's argument that even if the Court decides against ordering Defendant to reassign her, it can at least take the lesser step of instructing the Defendant to remove the restriction it has imposed against considering reassigning her until the end of her case, which is blatantly retaliatory in violation of 42 U.S.C. § 2000e-16 and 29 C.F.R. Part 1614.

Third,  Defendant, a federal agency, must comply with the EEOC's regulations and management directives on addressing internal EEO complaints. And, in this case, Defendant impermissibly de-prioritized the EEO Office's independence by having the EEO Director report to someone other than the agency head, and permitting alleged harassers' attempts to interfere with the EEO Office's handling of Ms. Burke's complaint. In Part III, plaintiff discusses her proposed injunctions directed at Defendant's improper treatment of its EEO Office.

Fourth, Plaintiffs like Ms. Burke need not specify in their complaint the exact nature of the injunctive remedies they request, especially where, as here, the Defendant served no discovery requests seeking specific information regarding the nature of the requested relief. But this will be more fully fleshed out in Part IV.

Finally, creating a retaliation prevention plan and prohibiting retaliation against the EEO Office protect the process and has the agency formulate a plan to prevent recurrent retaliation in the future. These will be explained in Parts VI and VII.

## I.  An Injunction is Mandatory in This Case Because There is Abundant Evidence of Consistent Past Discrimination and No *Clear and Convincing* Proof that Defendant Will Comply with Title VII.

The Parties have proposed two different and apparently—but not actually—competing descriptions of the standards, burdens, and appropriateness of injunctive relief in Title VII cases.

First, there is the question of whether an injunction is mandatory, upon which the parties disagree. This is due to a conflict in the case law. But that conflict disappears upon examination; injunctions may be mandatory upon certain facts, facts like those presented here. And when those facts are present, the Court must issue an injunction unless the Defendant can demonstrate by clear and convincing evidence that there is no reasonable probability that unlawful conduct will recur. *Spencer v. Gen. Elec. Co*., 703 F. Supp. 466, 468 n.4 (E.D. Va. January 17, 1989) ("*Spencer I*") (quoting *NAACP v. City of Evergreen*, 693 F.2d 1367 (11th Cir.1982)); *Lowe v. Atlas Logistics Grp. Retail Servs. (Atlanta), LLC*, No. 1:13-CV-2425-AT, 2015 WL 10891935, at *1 (N.D. Ga. Sept. 28, 2015).

### A. In the Fourth Circuit, an Injunction is Mandatory when a Plaintiff Demonstrates a Hostile Work Environment and Equitable Relief is Necessary to Prevent Further Discrimination.

Plaintiff has quoted *United States v. Gregory*, wherein the Fourth Circuit held, quite plainly and without limiting language[1], that "when a plaintiff has prevailed and established the defendant's liability under Title VII, there is no discretion to deny injunctive relief completely." 871 F.2d 1239, 1246 (4th Cir. 1989). Defendant, however, points to *Spencer v. Gen. Elec. Co.*, which held that "injunctions are by no means mandatory in a Title VII case, . . ." 894 F.2d 651, 660 (4th Cir. 1990) ("*Spencer II*"). These two cases, both decided by Fourth Circuit panels less than a year apart, and both apparently undisturbed by any subsequent decision, appear plainly contradictory. But that contradiction is only skin deep. Injunctions are mandatory when

---

[1] *Gregory* does not hold, as Defendant suggests, that the mandatory nature of an injunction in Title VII cases hinges on whether the case was brought as a class action or a pattern and practice case.

necessary to prevent future harassment, but, as common sense would dictate, courts need not issue injunctions where they will fail as a tool to accomplish that end.

The first clue that *Gregory* and *Spencer* are consistent with each other comes from the composition of their respective panels. In both unanimously-decided cases[2], Judges Murnaghan and Hall made up a majority of the panel. Judge Murnaghan wrote the *Gregory* opinion in April 1989, which Judge Hall joined, and Judge Hall wrote the *Spencer* opinion in January 1990, which, in turn, Judge Murnaghan joined. It is self evident that, if Judges Murnaghan and Hall intended to overturn *their* holding in *Gregory* just eight months later, they would have likely, at the very least, cited or referenced it, and they did not.

But since *Gregory* remains good law, how can we reconcile it with *Spencer II*'s apparently contradictory position regarding non-mandatory injunctions? The answer is found in this Court's opinion in *Spencer I*[3], where Judge Ellis held: "Where, as here, a violation of Title VII is found, a court has the power, and indeed the obligation, to award any equitable remedies necessary 'to advance the dual statutory goals of eliminating the effects of past discrimination and preventing future discrimination.'" *Spencer I* at 469 (emphasis in original). Going further, this Court was *explicit* that injunctions are *mandatory* under some facts: "In such cases where there is 'abundant evidence of consistent past discrimination,' . . . 'injunctive relief is mandatory absent *clear and convincing* proof that there is no reasonable probability of further noncompliance with the law.' *Spencer I* at 469 n.4 (quoting *NAACP v. City of Evergreen*, 693

---

[2] There is a partial dissent in the *Spencer* case, but that dissent does not alter the analysis presented here.

[3] The Fourth Circuit unanimously affirmed this Court's decision in *Spencer I* and expressed approval of the "thorough district court opinion on the merits of Spencer's claims." *Spencer II* at 654.

F.2d 1367 (11th Cir.1982)) (emphasis added). Thus, where there is "abundant evidence of past discrimination," injunctions are mandatory, except if the employer provides *clear and convincing* proof that there is "no reasonable probability" of further noncompliance.

Put another way, if there are "lingering effects" or "a not insubstantial risk" of continued illegal treatment, then the issuance of an injunction is mandatory. *Spencer I* at 469. The Court's role is first to determine whether an injunction is necessary, and it does this by deciding whether "a cognizable danger of recurrent violation" exists. *Id*. That term of art, the "cognizable danger of recurrent violation," is a low bar, described by the United States Supreme Court as "something more than the mere possibility which serves to keep the case alive." *United States v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953). Regardless of the terminology used, in this case, that danger is obviously real, considering the additional retaliation described in Part I.D, below.

### B.   The Abundant Evidence Before The Court Shows Consistent, Management-Level Discrimination Against Ms. Burke.

Defendant fails to present the requisite clear and convincing evidence that might demonstrate equitable relief as unnecessary. Defendant argues that there is "no cognizable danger of recurrent violation." (Dkt. 129 pp. 12-13, 23-27.) But that assertion is contrary to the facts presented at trial and subsequent developments. During the trial, Plaintiff demonstrated that William Stephens and his subordinates in Counterintelligence (CI) had the power and intent to harass Ms. Burke. Defendant points out that most of the harassers (Malafarina, Taylor, and Buckley) are no longer in Ms. Burke's chain of command. (Dkt. 129 p. 8.) But, plainly, everyone who works in CI reports to Mr. Stephens, and that reporting relationship has stayed consistent throughout this case.

The evidence offers little hope that Stephens will refrain from future retaliation against Ms. Burke if she is required to continue working for him. Indeed, he has shown that he will go to extreme lengths to punish those who oppose or question the legality of his conduct. For example:

1.      The jury heard how Mr. Stephens admitted to Mr. Bishop that it is his *practice* to harass protesters. Stephens recommended to Bishop that a "tactic" that worked in the Air Force was to isolate people, take away their job duties, and take away their self-esteem. And this suggestion to Bishop demonstrates that Stephens believes that it is appropriate to recruit his management-level subordinates to assist in that harassment;

2.      The jury heard evidence that Mr. Stephens interfered with the EEO Director and Ms. Burke's EEO investigation;

3.      The jury heard how Mr. Stephens retaliated against Ms. Gabeler in addition to Ms. Burke;

4.      The jury heard evidence that Mr. Stephens allowed subordinates to retaliate against Ms. Burke with impunity. Specifically, Stephens demonstrated, by electing not to discipline or otherwise correct Mr. Malafarina for Malafarina's outrageous allegations against Ms. Burke in PEX 34, that he will permit subordinates to retaliate against Ms. Burke;

5.      The jury heard evidence about Mr. Stephens making a show of ignoring Ms. Burke in front of her colleagues; and

6.      Notwithstanding Defendant's contention that there was no possible basis for inferring that Stephens maintains ongoing hostility toward Ms. Burke, as of November 2017, Stephens "recently" slammed the door in Ms. Burke's face and refused to speak to her.

C.      *Defendant Proffers No Remedial Measures to Prevent Future Harassment.*

The foregoing is, of course, only the evidence that tends to show that Mr. Stephens retaliated against Ms. Burke, or knowingly permitted retaliation against Ms. Burke, that was presented during trial. That trial is over, and Defendant lost. And once an employer has been held liable under Title VII, it is the employer's burden to offer evidence that the unlawful conduct will not recur. *EEOC v. Boh Bros. Constr. Co., LLC*, No. 09-6460, 2011 U.S. Dist. LEXIS 91011, at *8 (E.D. La. Aug. 15, 2011), citing *Spencer*, 894 F.2d at 660 n.13. To meet that burden, the Defendant must demonstrate "*clear and convincing* proof that there is no reasonable probability of further noncompliance with the law." *E.E.O.C. v. Boh Bros. Const. Co., L.L.C.,* 731 F.3d 444, 469-70 (5th Cir. 2013); *Spencer I*, 703 F. Supp. at 469 n.4 (emphasis added). "[C]lear and convincing has been defined as evidence of such weight that it produces in the mind of the trier of fact a firm belief or conviction, without hesitancy, as to the truth of the allegations sought to be established, and, as well, as evidence that proves the facts at issue to be highly probable." *United States v. Antone*, No. 5:07-HC-2042-FL, 2012 U.S. Dist. LEXIS 137049, at *3-5 (E.D.N.C. Sep. 24, 2012) *Hall*, 664 F.3d at 461 (quoting *Jimenez v. DaimlerChrysler Corp.*, 269 F.3d 439, 450 (4th Cir. 2001) and citing *Addington v. Texas*, 441 U.S. 418, 423-24 (1979)). Here, Defendant could not possibly approach satisfying the "clear and convincing" evidentiary standard, since it is continuing to retaliate against Ms. Burke even as these proceedings continue. *See* Part I.D., below.

*Spencer I* provides a stark comparison. There, the Defendant terminated the single harasser, which, though not dispositive, demonstrated the Defendant's "*bona fides*" in addressing the harassment problem. 703 F.Supp at 470. Additionally, subsequent to the initiation of the

case, the Defendant instituted an anti-harassment policy, of which the Court said: "the scope and detail of GE's sexual harassment policy render injunctive relief unnecessary." *Id.* at 471.

DSS, in contrast, has not terminated William Stephens. It has not terminated Franklin Malafarina.[4] Defendant DSS has not terminated *anyone* as a result of two findings[5] that it illegally harassed Ms. Burke. Neither has Defendant shared with the Court *any single affirmative step* that it has taken or plans to take, as a result of this case, to prevent future harassment. Why, for example, does Defendant's opposition brief make no mention of additional training it has required or plans to require of the harassers? Why does it fail to describe the discipline it intends to impose upon the harassers? The jury's verdict is now two months old. Why, even now, has Defendant neglected to impose a shred of deterrent-focused accountability upon the individuals who subjected Ms. Burke to a hostile work environment in contravention of federal law and with whom she continues to work?

The answer is simply this: the Court should find that, without the issuance of an injunction, Defendant will do nothing to discipline, train, or hold accountable any person that the jury found harassed Ms. Burke. As a result, those individuals will (correctly) believe that they may continue to harass Ms. Burke without risk of consequence. If something is to be done, it falls to the Court. An injunction is *necessary* to prevent future harassment.

---

[4] Mr. Malafarina has twice been implicated in harassing Ms. Burke and yet Defendant rewards him by sending him to Harvard University to participate in the National Security Fellowship Program. Upon completion, his position at DSS is guaranteed. (Dkt. 129 p. 8.)

[5] As this Court is aware, in addition to the jury's verdict, the Final Agency Decision found the managers retaliated against Ms. Burke and unlawfully harassed her.

D.     *The Evidence Subsequent to Trial Demonstrates Defendants' Managers' Ongoing Intent to Harass and Retaliate Ms. Burke, Further Demonstrating the Need for an Injunction.*

While ample evidence presented at trial warrants imposition of an injunction, as alluded above, key post-trial facts do too. Specifically, in Ms. Burke's Declaration Under Penalty of Perjury, attached hereto as PEX 3, she shows that subsequent to her November 2017 initial Motion and brief, she met with Defendant's Chief of Staff, Troy Little, and discussed the fact that her performance appraisal score had been suddenly downgraded critically, from 4.7 previously, to 3.3 this time. PEX 3. The Declaration explains that when she received the lowered score she asked Stephens, the approving officer, to reconsider but he refused. Tellingly, though, when she formally appealed over his head she won an upgrade to 4.2. *See* 12/21/2017 "Performance Management" Memo, "PEX 4". Though management was busy severely lowering Ms. Burke's evaluation score *during the pendency of this litigation*, when Ms. Burke asked Mr. Little for reassignment to a position not subordinate to Mr. Stephens, she was told that "the office of general counsel had advised him that he was not allowed to do anything" until conclusion of the case. Title VII strictly forbids Defendant from denying Ms. Burke employment benefits and opportunities that would normally be available to her under its policies, just because of her case. That includes, of course, the ability to have a reassignment request considered. Yet, Defendant has made a blanket rule that she is stuck until the end of this case.

Moreover, as Plaintiff noted in her opening brief, Mr. Stephens, or others sympathetic to him, threatened Ms. Burke through the Washington Post, soliciting the general public to complain about her to the Inspector General. *See* (Dkt. 117, PEX 2). Defendant contends that the hostile comments in the Post against Ms. Burke might not have come from Burke's management

chain (Dkt 129 p. 24-25) but it offers no proof in support of that proposition. Defendant alone has the power to educate the Court and Plaintiff on this issue.

Defendant has almost certainly elected not to rebut this inference with specific facts because it knows that Stephens, Malafarina, or other CI managers published the Washington Post comments. To wit, any reasonable attorney in Defense Counsel's shoes would have, upon learning of the Washington Post comments, asked Stephens, Malafarina, and Buckley whether they made those posts. Further, if those individuals did not, in fact, make those comments, any reasonable attorney would have included affidavits to that effect in their opposition to the pending motion. No such affidavits are attached and, absent some further demonstration to the contrary, the Court should make the reasonable inference that Stephens, Malafarina, or other CI managers are the only people with the requisite knowledge and incentives to have posted the harassing comments.

## II.      Victims of Workplace Harassment are Entitled to Personnel Actions that Remedy Their Subordination to Their Harassers

The particular remedy of separating a harasser from his victim is deeply entrenched in hostile environment law and policy and is highly appropriate here. Removing the harasser's opportunity to harm the victim can frequently satisfy the employer's obligation to correct a known hostile environment.  *McKinney v. G4S Gov't Sols., Inc.*, 179 F. Supp. 3d 609, 623 (W.D. Va. 2016). Similarly, reassigning the victim to a job of equal grade is a recognized and important remedial action that can follow even a merely *alleged* hostile work environment. *Rice v. Howard Cty. Gov't*, Civil Action No. ADC-16-3498, 2017 U.S. Dist. LEXIS 209882, at *35 (D. Md. Dec. 19, 2017).  In *Spencer I & II*, this Court and then the Fourth Circuit both declined to order an injunction, but that was in part because the Employer terminated the harasser. 894 F.2d 651, 660.

Transferring Ms. Burke or Mr. Stephens would be an important first step toward making Plaintiff whole and preventing recurrent harassment, yet Defendant refuses. Indeed, as noted in Part I.D., above, in opposition to her persistent and recent requests for separation from Stephens, Defendant's Office of General Counsel has apparently ordered that Burke is barred any from reassignment until this case is over. PEX 3. This is the inverse of evidence of unlikelihood of future retaliation; it is *ongoing retaliation occurring right now*.

Defendant argues ironically that it might be subjected to unreasonable contempt proceedings by the Court's retaining jurisdiction through injunction. (Dkt. 129 pp. 29-30.) Given the evidence of ongoing retaliation, however, Defendant actually appears to be waiting until the Court's supervision ends to make yet further retaliatory moves. Defendant should not be permitted to wait until the Court loses jurisdiction before it is compelled to cease retaliating. Instead, Defendant should be required to take the ordinary post-hostile environment step of separating Ms. Burke from her proven antagonist, Stephens.

If Defendant were to deny the reasonable reassignment request and/or take retaliatory steps against Ms. Burke, she could file another case, which, if the past is any guide, would end up in a trial before this Court in 2022. However, she should not be pushed toward that judicially-uneconomic step when this Court could solve the issue right now.

Injunctive relief is least appropriate where there is "no indication that defendants have indulged in any similar discrimination in the past, or that they are likely to do so in the future," such as in a case which "appears to represent an isolated incident." *See Hylind v. Xerox Corp.*, 749 F. Supp. 2d 340, 353 (D. Md. 2010) (Messitte, J.), citing *E.E.O.C. v. Financial Assurance, Inc.*, 624 F. Supp. 686. 695 (W.D. Mo. 1985). The district court in *Hylind* noted that:

deterrence will certainly flow from the magnitude of the jury verdict and the Court's decision in this case. Hyland has been awarded $300,000 in compensatory damages and $896,509 in back pay, and Xerox now faces the further prospect of attorney's fees. Though not as direct as an injunction, substantial awards such as these unquestionably motivate companies to ensure that their employment practices conform with the law, lest they face similar judgments in the future.

*Hylind v. Xerox Corp.*, 749 F. Supp. 2d 340, 354 (D. Md. 2010). Unlike in *Hylind,* no such damages, and the deterrence they command, are flowing in this case. Based on *Hylind*'s logic, the injunction becomes all the more important to assure Defendant's compliance with its non-retaliatory obligations.

Addressing another of Defendant's arguments, the relief requested in this section pertains only—directly-- to Ms. Burke herself. Accordingly, it cannot be vitiated by Defendant's (incorrect) (p. 8) assertion that it might have applied a different strategy if it had "been aware that Plaintiff intended to seek . . . to affect the very structure of DSS as well as individuals within DSS nationwide who had nothing to do with Plaintiff's circumstances. . ."

Defendant (p. 23) likens Burke's separation request to a bumping situation, but there has been no showing that anyone else would have to move as a part of granting Burke's injunction request in this regard.  Nor is a wholesale "reorganiz[ation]" needed. See Def's Brf. at 23. Also, no showing has been made that national security would be compromised even an iota.  *Id.*

Defendant (p. 23) further contends that *Lowery v. Circuit City Stores, Inc.*, 158 F.3d 742, 766 (4th Cir. 1998), supports denial of a separation of Ms. Burke from Stephens. Actually, *Lowery* stands for the opposite proposition in this regard, as the Fourth Circuit therein granted the individually-tailored equitable remedy sought, for placing the individual plaintiff in "as near

a position as possible to where she would be now had the discrimination not occurred." *Id*. at 767, citing *Pecker v. Heckler*, 801 F.2d 709, 711 (4th Cir. 1986).

Finally, citing *Hayes v. Shalala*, 933 F. Supp, 21, 27 (1996), Defendant (Brf. at 28 no. 18) states that: "[b]ecause the jury returned a general verdict on liability, there is no way to know for sure what precise events the jury considered violative of Title VII and thus what precise events should even be under consideration as subject to a potential injunction." However, *Hayes* and the cases cited therein clarify that the lack of more specific findings means merely that the Court is not compelled to assume how the jury interpreted specific evidence.  See *Blake v. Hall*, 668 F.2d 52, 54 (1st Cir. 1981) ("[b]ecause the jury returned a general verdict on liability, there is no way to know for sure what precise events the jury considered violative of Title VII and thus what precise events should even be under consideration as subject to a potential injunction"). The cases demonstrate that the Court is perfectly free to make reasonable findings in this regard. So, contrary to Defendant, here it would be well within the Court's province to conclude that it was Burke's supervisors, including Malafarina and Stephens, who created the hostile work environment from which she now seeks to escape.

Considering the occurrence of ongoing retaliation, the well-tailored nature of the request and its nexus to the facts upon which the jury based its verdict, the Court should order the Defendant to grant Ms. Burke's request for a permanent reassignment. Alternatively, at a minimum, Defendant should be enjoined from continuing to deny her access to the usual and customary opportunity to seek a reassignment that non-protesting employees enjoy.

### III. Defendant Has No Discretion to Delegate the Agency Head's Obligation to Receive Direct Reports from the EEO Director.

Plaintiff has requested that Defendant be ordered to comply with EEOC regulations and management directives that require the agency's EEO Director to report *directly* to agency heads. The Defendant attempts to justify their de-prioritization of the elimination of workplace discrimination by claiming it is authorized by 29 C.F.R. § 1614.607. That justification fails to take into account that 29 C.F.R. § 1614.102(b)(4) and 29 C.F.R. § 1614.607 must be read in *pari materia* giving full effect to both regulations as far as possible.

Statutes should be read to give effect to every part and not render any provision inoperative, superfluous, void or insignificant. *Doe v. Cooper*, 842 F. 3d 833, 844 (4th Cir. 2016) (*citing Corley v. United States*, 556 U.S. 303, 314 (2009)). At the point where two statutes conflict, the specific prevails over the general. *Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987). Therefore, while §1614.607 says "An agency head may delegate authority under this part, to one or more designees;" §1614.102 provides that DSS shall designate a Director of Equal Employment Opportunity (EEO Director) and that "EEO Director shall be under the immediate supervision of the agency head."

So while the Agency Director may delegate authority under §1614.607, that power is not applicable to the EEO Director's reporting requirements. To conclude otherwise would render superfluous the phrase "under the immediate supervision of the agency head." And if the EEO Director reported to the the Agency Director's designee, he would not be under the Agency Director's *immediate* supervision. Immediate means "not separated by other persons or things." *Black's Law Dictionary* "immediate" (10th ed. for the iPhone and iPad. Version 1.4, 2009).

Additionally, DSS incorrectly suggest that EEOC Management Directive 110 (MD-110) is merely guidance and does not carry the force of law. (Dkt 129 p. 9 n.6.) MD-110 is incorporated by reference in 29 C.F.R. 1614.102(b)(3). And MD-110 prohibits the EEO Director from reporting to the Chief Human Capital Officer or any "other officials responsible for executing and advising on personnel actions." It strains credulity to suggest that the "Chief of Staff" is not responsible for executing and advising on personnel actions.

### IV.    Defendant Has Been On Notice That Plaintiff Sought an Injunction Ever Since Plaintiff Filed Her Complaint, and It Chose Not To Explore the Requested Relief in Discovery.

Defendant argues that Ms. Burke's requests for equitable relief come as a surprise and it is thereby prejudiced. (Dkt. 129 pp. 7.) But Ms. Burke requested equitable relief in her initial complaint. (Dkt. No. 1 ¶¶ 1-2, 53). That request remained unchanged in her amended complaint. (Dkt. No. 41 ¶¶ 2, 37 ). The parties were permitted to conduct full discovery. (Dkt. No. 11, 12). The Defendant never made a discovery request concerning the equitable relief sought by Ms. Burke. In other words, while fully litigating this case through discovery, Defendant elected *not* to conduct any discovery about the specific equitable relief sought.

Now Defendant asks the Court to protect it from its own litigation strategy. Defendant complains that it was prejudiced by Ms. Burke's notice pleading, but it fails to enumerate any plausible prejudice that it has suffered. It asserts, in a single sentence devoid of support, that it was prejudiced because its "strategy may have been different" (Dkt. 129 p. 8), but it fails to specify how its strategy would have been different. This, frankly, is no prejudice at all.

F.R.C.P. 54(c) provides that final judgments "should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." The Fourth Circuit

liberally construes this in favor of granting all relief appropriate based on the facts proven. *Route Triple Seven, Ltd. Partnership v. Total Hockey Inc.*, 127 F.Supp.3d 607, 614 (E.D. Va. 2015) (citing *Robinson v. Lorillard Corp.*, 444 F.2d 791, 803 (4th Cir. 1971).

V.      **The Court Should Prohibit Defendant From Retaliating Against Ms. Burke for her EEO Complaints and for Prosecuting this Litigation.**

"The equitable relief ordinarily available in Title VII workplace harassment cases is an injunction prohibiting further harassment." *EEOC v. Conn-X, LLC*, No. L-09-2881, 2012 U.S. Dist. LEXIS 16316, at *3 (D. Md. Feb. 8, 2012), citing *Amirmokri v. Baltimore Gas & Elec. Co.*, 60 F.3d 1126, 1132 (4th Cir. 1995). In *Brady v. Thurston Motor Lines*, for instance, the Fourth Circuit found that enjoining practices "in the areas in which the court found discrimination" and imposing the duty to create nondiscriminatory working conditions was an appropriate exercise of the district court's authority. 726 F.2d 136, 146-47 (4th Cir. 1984). This is particularly appropriate here, as the retaliation continues even after verdict and anticipated judgment.

Defendant contends that this type of injunction is forbidden, citing *Miller*, 2007 WL 2570219, at *4. However, courts have ordered this type of relief in other cases. *See e.g. Boh Bros. Const. Co., L.L.C.,* 731 F.3d 444; PEX 3 (trial court order issuing the injunctive relief in *Id.*). And plaintiff does not simply seek a blanket injunction to "obey the law," but an injunction narrowly tailored to protect her from further retaliation.

Burke's requested injunction is far narrower than others that have been found overbroad. In *Davis*, the Fourth Circuit found that an injunction that the employer "refrain from 'committing further violations of Title VII'" was overbroad in the context of a sex discrimination lawsuit. *Davis v. Richmond, Fredericksburg and Potomac R. Co.*, 803 F.2d 1322, 1328 (1986).

However, the *Davis* prohibition is far more broad than plaintiff's request. Ms. Burke requests an order that DSS cease its current retaliation, and be prohibited from continuing to create a retaliatory hostile work environment against her in the future (or in the alternative, prohibit DSS from engaging in the specific acts that the Court finds constituted that hostile work environment). Unlike the plaintiff in *Davis*, Ms. Burke is not asking for an injunction to prohibit DSS from engaging in *any* discrimination against *all* of its employees.

So Ms. Burke's requested relief is applicable to a narrower class of people, namely Ms. Burke, and is narrower in its scope of prohibited conduct, i.e. retaliatory harassment. Thus, all she seeks is for Defendant to refrain from *continuing* to violate her Title VII rights. Courts frequently order even government employers to discontinue unlawful discrimination reflected in a jury verdict. *See e.g. E.E.O.C. v. KarenKim*, 698 F.3d at 100. And granting relief to a class of people is appropriate in a nonclass-action case so long as the individual plaintiff is a member of that class granted relief. *See Rau v. Apple-Rio Mgmt. Co., Inc.*, 85 F.Supp.2d 1344, 1352 (N.D. Ga. 1999) (citing *Dybczak v. Tuskegee Institute*, 737 F.2d 1524, 1527 (11th Cir. 1984)).

### VI.   The Court Should Prohibit DSS from Retaliating Against the EEO Office for Engaging in the Legally Protected Process

While the EEO office injunction might help Ms. Burke, its main objective is eliminate the cognizable danger of a recurrent violation. Defendant contends that there is no chance of a recurrence considering that Lyle and Labov have left. (Dkt. 129 pp. 12-14.) Instead, this shows that the EEO professionals were demoralized by working at DSS, leaving intact the need for an injunction.

### VII.    DSS Should Create a Retaliation Prevention Plan

DSS objects to formulating a plan to prevent future retaliation, asserting that  it is vague, overbroad, violates the separation of powers and does not remedy the past violation. But this injunction is to remedy ongoing retaliation and prevent recurrent violation. Its prospective nature is evident and demonstrates that its purpose was never just to remedy past violations.

Separation of powers is a doctrine that works as much against Defendant as for it in this instance. It willfully violated Title VII by engaging in harassing conduct for a period of years. Because the executive branch has willfully violated a valid statute enacted by the legislative branch and the judicial branch has found a violation; the judiciary is actually performing its constitutional role when it issues appropriate injunctive relief authorized by statute. And here, ordering the defendant to formulate his own plan is the simplest and least restrictive means of vindicating the plaintiff's rights to be free from future harassment.

### CONCLUSION

Ms. Burke has sought a *remedy* for ongoing retaliation that caused her, as she testified, to regret filing her case. Without an injunction, there will be no remedy and, as demonstrated by the post-trial retaliation described in Part I.D., above, she will continue having to choose between providing for her family while enduring retaliation, or fleeing the harassment yet sacrificing her career and income. That is fundamentally unjust. Ms. Burke has shown herein that the Court could help breathe meaning into the jury's verdict by, if not more, instructing the Defendant to cease barring her from the opportunity to obtain reassignment or by enjoining Defendant from retaliatorily downgrading her performance appraisals. For those reasons, and for all the reasons described above, the Court should **GRANT** Plaintiff's Motion for Injunctive Relief.

Dated: January 16, 2018

/s/
Jacob M. Small (VSB # 84460)
Benjamin R. Inman (VSB # 84006)
Leizer Goldsmith (*pro hac vice*)
Attorney for Patricia Burke
J. Madison PLC
1750 Tysons Blvd.
Suite 1500
McLean, Virginia 22102
P (703) 910-5062
F (703) 910-5107
jmsmall@jmadisonplc.com

**CERTIFICATE OF SERVICE**

I hereby certify that on January 16, 2018, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system, which will automatically send notification of such

filing to the following attorney of record:

Andrew S. Han
Kimere Kimball
The United States Attorney's Office
Justin W. Williams U.S. Attorney's Building r
2100 Jamieson Avenue
Alexandria, Virginia 22314
andrew.han@usdoj.gov
Kimere.Kimball@usdoj.gov

/s/
Jacob M. Small (VSB # 84460)
Attorney for Patricia Burke
J. Madison PLC
1750 Tysons Blvd.
Suite 1500
McLean, Virginia 22102
P (703) 910-5062
F (703) 910-5107
jmsmall@jmadisonplc.com