PEX 3

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### *Alexandria Division*

PATRICIA BURKE,

      *Plaintiff,*

    v.

JAMES MATTIS,

      *Defendant.*

1:16-cv-01256-LO-JFA

### DECLARATION OF PATRICIA BURKE

Pursuant to 28 U.S.C. § 1746, I, Patricia Burke, hereby declare and state as follows:

1.      On December 5th, 2017 at 2pm (after my lawyers had already filed the Motion for Equitable Relief), I met with Defense Security Service Chief of Staff Troy Little for about thirty minutes. I requested the meeting because I had concerns about the office environment within the counterintelligence directorate. I had concerns about my performance review, as I thought I had been downgraded. I was having to sign in and out again, and due to the history of the situation within CI, I believed retaliation was starting up again.

2.      Prior to this meeting I had met with Dana Richards in the cafeteria. In this meeting Dana expressed the belief that I had embarrassed management, his hands were tied, and he was unable to change my review. He made comments about fluffing my resume to get out of the office.

3.      By that, I think he meant that I should take training to make my resume look better.

4.      My performance evaluation had been downgraded from a 4.7 to 3.3. I requested reconsideration from Mr. Stephens who is the approving officer. However, he denied a change to my evaluation.

5.      Next, I had to initiate a formal proceeding to obtain a fair score, by going to a formal reconsideration panel.  The panel agreed with all but one of my points and adjusted my evaluation to a 4.2.

6.      The December 5 meeting with Troy Little started with him stating that he couldn't discuss specifics of the case since it was ongoing.

7.      We then spoke about my evaluations, my past evaluations, and my rating during the previous two or three years compared to now. He asked for my resume to see if he could help, but specified this could only be after this case was over. He had been told incorrectly that I was an intelligence specialist series—not my correct area of the program management series.

8.      Mr. Little said that I needed to be patient, he would see what he could do to make this situation better, whether it was moving me or doing something, but he couldn't do anything until we were finished with court because the office of general counsel had advised him that he was not allowed to do anything while we were still involved in court proceedings and the case was not over.

9.      Mr. Little said that he would speak with Mr. Stephens again in reference to him not speaking to me, in reference to the review and in reference to my overall treatment.

10.     Mr. Little tried to explain to me that while he understands it's not right, and he's not personally ok with it, that people don't know how to deal with me, they are scared to talk to me because of the case. He said that was a DSS problem that they have to work on

11.     I asked Mr. Little at that moment to be moved away from Stephens's area. I expressed my feeling that I didn't understand why they would not just move me, that I want to be out of this toxic environment. I mentioned that this is a topic of conversation within the CI, that

Mr. Stephens still doesn't speak to me, that I come in and do my job and do it well, but there is always going to be this set of circumstances hanging over me. I mentioned Dana Richards not knowing how to deal with me.

12.     I explained to Mr. Little that I had not yet been given my yearly objective and it was now December and the objective was due in October. I again expressed concern that if my supervisor was scared to do the right thing, I had major concerns that I had no support system which had been available when Nelson Bishop was there to act as a buffer between myself and Mr. Stephens. I stated specifically that Dana Richards was not going to go up against Mr. Stephens while Richards was hoping for a promotion.

13.     I sent my resume to Troy Little after the meeting, as we had discussed.

14.     Previously, in recent years, I have applied for many jobs within DSS that have been vacant.

15.     They have all been outside of Mr. Stephens's authority.

16.     Upon applying, I made approximately five to seven certificate lists, and was interviewed approximately four times.

17.     I have every reason to expect that there will be further vacancies within DSS within the next year, and that I will be qualified for many of these positions, some of which will not be under Mr. Stephens and will be at my grade level or below.

18.     Accordingly, I am clearly qualified for such jobs, and there is no reason why DSS could not reassign me non-competitively in the near future, to separate me from Stephens.

3

I declare under penalty of perjury that the foregoing is true and correct. Executed on January 16, 2018,

_____
Patricia Burke